UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RUDOLPH P. KESZTHELYI, ) | |
| ) | |
|     *Plaintiff*, ) | |
| v. ) | No. 1:06-cv-18 |
| ) | *Collier/Lee* |
| SANDY MATTICE, U.S. Attorney; PAUL ) | |
| LAYMON, AUSA; TONY ISOM, DEA; LYN ) | |
| BARKER, SA IRS; RANDY NOORBURGEN, ) | |
| CPD; JAMES CAVANOUGH, SAC BATF; ) | |
| JEFFERY HARWOOD, BAFT; GREG ) | |
| BOWMAN, CPD; WENDEL FROST, BATF; ) | |
| MICHAEL MESSINGER, BATF; and others ) | |
| known and unknown; ) | |
| ) | |
|     *Defendants*. ) | |

## **M E M O R A N D U M**

Plaintiff Rudolph P. Keszthelyi ("Keszthelyi") has filed a *pro se* prisoner civil rights complaint pursuant to 42 U.S.C. § 1983. Keszthelyi has sued the individual defendants in their personal and official capacities and asserts the complaint is filed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which allows, in certain circumstances, a suit for damages to be maintained against a federal actor in his or her individual capacity for alleged violation of constitutional rights. Keszthelyi alleges violation of his constitutional right to due process and equal protection. Specifically, Keszthelyi alleges during 1999 and 2000 the defendants conspired to violate his equal protection and due process guarantees when they engaged in the selective prosecution of him (Case No. 1:99-CR-100, J. Edgar). Keszthelyi asserts that none of his identified associates "were ever arrested or subjected to the long arm of the law in its entirety" (Court File No. 3).

Keszthelyi entered a guilty plea to one count of money laundering and one count of cocaine distribution on July 5, 2000. *United States v. Keszthelyi*, 1:99-cr-100 (2000 E.D. Tenn). Keszthelyi was sentenced to 120 months imprisonment on November 6, 2000. Keszthelyi brings this instant complain claiming he was selectively prosecuted in his criminal federal case.

For the reasons set forth herein, no service shall issue, and this complaint will be dismissed.

## I.     *Application to Proceed In Forma Pauperis*

It appears from the application to proceed *in forma pauperis* (Court File No. 1) submitted by Keszthelyi he lacks sufficient financial resources at the present time to pay the required filing fee in the amount of $250.00. However, Keszthelyi is not relieved of the ultimate responsibility of paying the $250.00 filing fee. Since Keszthelyi is a prisoner at the FMC in Lexington, P.O. Box 14500, Lexington, KY 40512, he will be **ASSESSED** the civil filing fee of $250.00 under the Prisoner Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321 (1996), codified in 28 U.S.C. § 1915.

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Keszthelyi's inmate trust account at the institution where he now resides shall submit to the Clerk, United States District Court, Post Office Box 591, Chattanooga, Tennessee 37401-0591, as an initial partial payment, whichever is the greater of

      (a)    twenty percent (20%) of the average monthly deposits to Keszthelyi's inmate trust account; <u>or</u>

      (b)    twenty percent (20%) of the average monthly balance in Keszthelyi's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Keszthelyi's preceding monthly income (or income credited to his trust account for the preceding month), but only when

such monthly income exceeds $10.00, until the full filing fee of $250.00 as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be **DIRECTED** to send a copy of this memorandum and Order to the Warden of the FMC-Lexington, the Trust Fund Officer of the FMC-Lexington, and the Commissioner of the Bureau of Prisons to ensure the custodian of Keszthelyi's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of Keszthelyi shall collect the filing fee as funds become available. The accompanying Order shall become a part of Keszthelyi's file and follow him if he is transferred to another institution. The agency having custody of Keszthelyi shall continue to collect monthly payments from his prisoner account until the entire filing fee of $250.00 is paid.[1]

Keszthelyi will also be **ORDERED** to notify this Court of his change of address if he is transferred to another institution, and to provide the prison officials at any new institution with a copy of this order. Failure of Keszthelyi to notify this Court of an address change and/or the new prison officials of this order and outstanding debt, will result in the imposition of appropriate sanctions against him without any additional notice or hearing by the Court.

## II.   *Standard of Review*

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent

---

[1] **Send remittances to the following address:**

>   Clerk, U.S. District Court
>   P.O. Box 591
>   Chattanooga, TN  37401-0591

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**

3

Case 1:06-cv-00018   Document 4   Filed 02/23/06   Page 3 of 9   PageID #: 3

standard than formal pleadings drafted by lawyers. *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Boag v. MacDougall,* 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. State of Texas,* 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the FEDERAL RULES OF CIVIL PROCEDURE which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to FED. R. CIV. P. 12(b)(6) – failure to state a claim upon which relief may be granted); *LRL Properties,* 55 F.3d at 1103-04; *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools,* 960 F. Supp. 1259, 1268 (W.D. Mich. 1997).

The Court screens the complaint pursuant to 28 U.S.C. § 1915A and § 1915(e). Furthermore, 28 U.S.C. §§ 1915A and 1915(e)(2) provide the Court must dismiss a case at any time if the Court determines it is frivolous or fails to state a claim upon which relief can be granted.

> When screening a prisoner complaint, a district court must examine both § 1915(e)(2) and § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C. § 1915A. Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the complaint under § 1915(e)(2). The requirements of §1915(e)(2) overlap the criteria of § 1915A.

> Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is restricted neither to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. A case that may not initially appear to meet §1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Thus, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case can proceed in due course. A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners. The dismissal of a complaint under §1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1)- (2). See *In re Tyler*, 110 F.3d at 529-30. We make it explicit: a court's responsibility under the Prison Litigation Act is to first examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order.

*McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir. 1997).

### III. *Facts*

The facts of Keszthelyi's case are detailed at length in the opinion of Kesztheyli's direct appeal. *United States v. Keszthelyi*, 308 F.3d 557, 561-66 (6th Cir. 2002). The following relevant facts are taken from that opinion.

Keszthelyi migrated to the United States from South Africa in 1992 on a work visa. After settling in Chattanooga, Tennessee, Keszthelyi worked for E & R Products, which conducted various woodworking assignments. Keszthelyi purchased the business in 1994, but his business license expired in 1995 and there is no record of the business operating beyond this time. Keszthely's visa

5

also expired in 1995, but Keszthelyi remained in the United States illegally.

In 1998 various law enforcement agencies initiated an undercover investigation to identify individuals selling cocaine in Chattanooga night clubs. Keszthelyi was the primary target of this investigation. Jeff Harwood ("Harwood"), a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms, worked undercover, posing as a successful Nashville businessman named Jeff Harris who was on probation for prior drug arrests. During the course of his undercover investigation, Harwood made several controlled purchases of cocaine from Keszthelyi.

Based on this and other evidence, law enforcement officials obtained a warrant to search Keszthelyi's home on October 8, 1999. That day, law enforcement agents arrested Keszthelyi as he was leaving his home in his vehicle. The agents searched Keszthelyi's vehicle, finding four grams of cocaine. Soon thereafter, the agents searched Keszthelyi's home pursuant to the search warrant, finding two firearms, approximately $1,000 in cash and various drug paraphernalia, but no cocaine. The following day, October 9, 1999, agents re-entered Keszthelyi's residence to conduct a second search but without another warrant. During this search officers found approximately one ounce of cocaine.

Keszthelyi ultimately entered into a plea agreement, whereby he pleaded guilty to one count of money laundering, in violation of 18 U.S.C § 1957, and one count of distributing cocaine hydrochloride, in violation of 21 U.S.C. § 841. In exchange, the government dismissed the remaining 85 counts. Keszthelyi was sentenced to 120 months imprisonment.

Keszthelyi claims he had numerous associates assisting him in the distribution of cocaine but none of them were prosecuted, at least not to the extent he was prosecuted. Keszthelyi claims this demonstrates he was subjected to selective prosecution.

6

### IV. *Analysis - 42 U.S.C. § 1983 Claim*

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States by a person acting under color of law, without due process of law. *Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *Chatman v. Slagle,* 107 F.3d 380, 384 (6th Cir. 1997); *Brock v. McWherter,* 94 F.3d 242, 244 (6th Cir. 1996); *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 995 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991) *cert. denied,* 502 U.S. 1032 (1992).

Keszthelyi's claim under 42 U.S.C. § 1983 he was subjected to selective prosecution will be dismissed as time-barred. Keszthelyi filed his complaint on or about December 14, 2005 (*see* Court File No. 1). For purposes of 42 U.S.C. § 1983, state statutes of limitation and tolling principles shall apply to determine the timeliness of the claims asserted. *See Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). However, federal law determines the accrual of those claims. *Collyer v. Darling,* 98 F.3d 211, 220 (6th Cir. 1996), *cert. denied,* 520 U.S. 1267 (1997); *LRL Properties v. Portage Metro Hous. Auth.* 55 F.3d at 1107.

In *McSurely v. Hutchinson*, 823 F.2d 1002, 1005 (6th Cir. 1987), *cert. denied*, 485 U.S. 934 (1988), the Sixth Circuit held *Bivens* actions should be governed by the same statute of limitations as § 1983 actions. The one-year statute of limitations period contained in TENN. CODE ANN. § 28-3-104 applies to civil rights claims arising in Tennessee. *See Jackson v. Richards Medical Co.,* 961 F.2d 575, 578 (6th Cir. 1992). Consequently, the statute of limitations applicable to Keszthelyi's *Bivens* claim is one year.

Generally, a tort cause of action accrues when there has been a violation of a legally protected interest, and such a violation usually occurs when a tortious act is committed. *See Echols*

7

*v. Chrysler Corp.,* 633 F.2d 722, 725-26 (6th Cir. 1980). This is known as the "time of event" rule and is applied whenever greater than *de minimis* harm is discernible at the time of the tortious event. *Hicks v. Hines Inc.,* 826 F.2d 1543, 1544 (6th Cir. 1987).

A statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his actions. *Collyer,* 98 F.3d at 220. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir. 1991). Thus, Keszthelyi's *Bivens* action accrued when he knew or had reason to know of the injury on which the action is based. *See Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).

According to the record, Keszthelyi was sentenced on the crime which he claims is the basis of his selective prosecution on November 6, 2000 (*see* Court File No. 97 in Case No. 1:99-CR-100). Therefore, Keszthelyi had reason to know of his alleged injury before or at the time he was sentenced on November 6, 2000. Through the exercise of due diligence, Keszthelyi could have discovered his associates were not being prosecuted during the time of his criminal prosecution. A person exercising reasonable diligence would have expeditiously attempted to determine whether his associates were being prosecuted and would not have waited over five years before filing a complaint about the matter. To hold the statute of limitations did not begin to run until several years after Keszthelyi's conviction and sentencing would extend the limitations period indefinitely, thereby defeating the purpose of the statute of limitations. Accordingly, the limitations period on the claim for damages arising from the events surrounding the prosecution of Keszthelyi began to run no later than the date of his sentencing, November 6, 2000.

Applying the one-year statute of limitations, any claim that accrued prior to December 14,

2004, is time-barred. According to the record before the Court, Keszthelyi was sentenced in his criminal case on November 6, 2000, more than five years before he filed this complaint. Therefore, Keszthelyi's claim the defendants engaged in selective prosecution of him is time-barred.

Keszthelyi's complaint will be **DISMISSED** *sua sponte* for failure to state a claim on which relief may be granted because it is time-barred under 42 U.S.C. § 1983. 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(I)(ii).

An appropriate order will enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**